## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MASTER MIND MUSIC, INC.,    :
    :
    Plaintiff,    :
    :
v.    :    CIVIL ACTION NO.
    :    1:12-CV-162-RWS
BLOCK ENTERPRISES, LLC,    :
RUSSELL SPENCER, BAD BOY    :
RECORDS, LLC, ATLANTIC    :
RECORDING CORP., AND    :
JASIEL ROBINSON A/K/A    :
YUNG JOE,    :
    :
    Defendants.    :

## ORDER

This case comes before the Court on Block Enterprises, LLC's and

Russell Spencer's Motion to Dismiss [11], and Bad Boy Records, LLC's and

Atlantic Recording Corporation's Motion to Dismiss [12].[1] After reviewing the

record, the Court enters the following Order.

### Background

Plaintiff, Master Mind Music, Inc., is an independent music production

---

[1] As of the date of this Order, it does not appear that Defendant Jasiel Robinson has been served in this action.

company in Atlanta, Georgia operated primarily by Chauncey Stevens.[2]  On

February 3, 2005, Plaintiff and Jasiel Robinson ("Robinson"), professionally

known as Yung Joc, entered into a written agreement titled Artist Development

and Exclusive Recording Agreement ("Plaintiff-Robinson Artist Development

Agreement").  Dkt. [1-1].  Under the Artist Development Agreement, Plaintiff

was entitled to Robinson's exclusive music recording services, all master

recordings created by Robinson during the term of the agreement, and the

exclusive right to copyright the master recordings in its own name.

Further, the agreement gave Plaintiff the exclusive right to manufacture

records and otherwise sell and exploit the master recordings, and granted

Plaintiff administration and co-ownership rights of compositions written or

controlled by Robinson.  Plaintiff also received a co-publishing interest in

Robinson's compositions and was entitled to fifty percent of Robinson's

publishing share of income earned for the exploitation of all compositions

written by Robinson during the term of the agreement.  During the term of the

agreement, Robinson performed on numerous master recordings and wrote

numerous compositions.

---

[2] Unless otherwise noted, the facts are taken from the Complaint [1].  At the
motion to dismiss stage, all well-pleaded facts in the Complaint are accepted as true.
Cooper v. Pate, 378 U.S. 546, 546 (1964).

Under the Artist Development Agreement, Plaintiff was obligated to actively seek a recording and distribution agreement for Robinson with a major record company. Plaintiff helped Robinson record a debut album. By the fall of 2005, Robinson's debut single, "It's Goin' Down," was being played frequently on Atlanta radio stations.

Robinson's success in 2005 drew the attention of Russell Spencer ("Spencer"), principal of Block Enterprises, LLC ("Block"), who expressed interest in collaborating with Plaintiff to distribute Robinson's debut album. On October 28, 2005, Plaintiff and Block entered into an agreement giving Block six months to obtain a distribution arrangement for Robinson's recordings. (Joint Venture Agreement Between Block Enterprises, LLC and Mastermind Music, Inc. for the Joint-Furnishing of the Recording Artist Professionally Known as "Yung Joc" to Labels within the Warner Brothers Record System ("Plaintiff-Block Joint Venture Agreement"), Dkt. [1-2].) At the time the Joint Venture Agreement was executed, Plaintiff and Robinson had already completed the master recordings for Robinson's first album.

The Joint Venture Agreement gave Block the authority to negotiate the terms of a distribution agreement. If Block successfully negotiated a distribution arrangement, Block was entitled to fifty percent of any revenue

flowing through that agreement. The Joint Venture Agreement did not convey, assign or transfer to Block any of Plaintiff's rights to Robinson's exclusive recording services or its rights to Robinson's master recordings or compositions. Under the Joint Venture Agreement, Plaintiff and Block were to maintain parity in all dealings with regard to Robinson, including equal division of revenue and profits, co-administration of recording budgets, development and production of an equal number of songs per album, and cooperation and input regarding the artistic direction of Robinson's albums.

On December 20, 2005, Spencer, on behalf of Block, negotiated and signed a distribution agreement with Bad Boy Records, LLC ("Bad Boy") and Atlantic Recording Corporation("Atlantic") ("Block-Bad Boy Distribution Agreement"). Under the Distribution Agreement, Block purported to transfer the exclusive recording services of Robinson to Bad Boy/Atlantic, as well as the copyright interests in all of Robinson's recordings for the term of the Distribution Agreement. As an exhibit to the Distribution Agreement, Robinson signed an Artist Inducement Letter agreeing to the terms of the Distribution Agreement and promising his exclusive recording services to Bad Boy/Atlantic.

AO 72A
(Rev.8/82)

Plaintiff maintains that Block did not disclose, and Bad Boy/Atlantic did not require it to disclose, the terms of the Plaintiff-Block Joint Venture Agreement or the Plaintiff-Robinson Artist Development Agreement. Further, Block never acquired from Plaintiff the rights to Robinson's recording services or the copyright interests in Robinson's recordings or compositions. Plaintiff was not privy to the negotiations of the Block-Bad Boy Distribution Agreement. Plaintiff was not a signatory to the agreement, nor is Plaintiff identified as a third-party beneficiary or joint venturer or partner of Block in the agreement.

In June 2006, Robinson's debut album, "New Joc City," was commercially released by Bad Boy/Atlantic. Plaintiff, upon information and belief, alleges that more than one million copies of the album have been sold. In August 2007, Robinson's second album, "Hustlenomics," was commercially released by Bad Boy/Atlantic. Plaintiff alleges that Bad Boy/Atlantic paid Block a recording fund for Robinson's first and second albums, but Block did not pay Plaintiff as required under the Plaintiff-Block Joint Venture Agreement. Block did not consult with Plaintiff during the recording of Robinson's second album, and did not give Plaintiff joint administration of the recording budget. Block has refused to disclose financial information to Plaintiff regarding the

AO 72A
(Rev.8/82)

final budget for Robinson's first two albums, as well as information about the revenue generated from those albums. Block also refused to demand that Bad Boy/Atlantic give Plaintiff "co-executive producer" credit and place Plaintiff's logo on the albums' packaging and liner notes.

It is undisputed that both Bad Boy and Plaintiff registered copyrights for Robinson's "New Jock City" and "Hustlenomics" albums. Bad Boy registered Robinson's "New Joc City" album with the Copyright Office on September 15, 2006 [11-5] and registered the "Hustlenomics" album on June 4, 2008 [11-5]. Plaintiff registered copyrights for both albums on January 5, 2012 [11-4].

It is also undisputed that Plaintiff has filed two prior lawsuits against Block in the Superior Court of Fulton County based on similar facts and allegations. The first suit was filed on February 14, 2007, the second on June 25, 2009. The first suit was mutually dismissed without prejudice on June 15, 2009 [11-2] and the second was dismissed without prejudice for want of prosecution on August 25, 2011 [11-3]. The case before this Court was filed on January 17, 2012 [1].

## Discussion

## I.    Legal Standard - Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a

AO 72A
(Rev.8/82)

"short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," mere labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  <u>Id.</u>

 "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  However, the same does not apply to legal conclusions set forth in the complaint.  <u>Sinaltrainal v. Coca-Cola Co.</u>, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing <u>Iqbal</u>, 129 S. Ct. at 1949).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Iqbal</u>, 556 U.S. at 678.  Furthermore, the court does not "accept as

true a legal conclusion couched as a factual allegation." <u>Twombly</u>, 550 U.S. at 555.

"The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." <u>D.L. Day v. Taylor</u>, 400 F.3d 1272, 1275-76 (11th Cir. 2005); <u>see also</u> Fed. R. Civ. P. 12(d). However, documents attached to a complaint are considered part of the complaint. Fed. R. Civ. P. 10(c). Documents "need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [the court] may consider such a document," provided it is central to the plaintiff's claim. <u>D.L. Day</u>, 400 F.3d at 1276. At the motion to dismiss phase, the Court may also consider "a document attached to a motion to dismiss . . . if the attached document is (1) central to the plaintiff's claim and (2) undisputed." <u>Id.</u> (citing <u>Horsley v. Feldt</u>, 304 F.3d 1125, 1134 (11th Cir. 2002)). "'Undisputed' means that the authenticity of the document is not challenged." <u>Id.</u>

**II.      Defendants' Motions to Dismiss**

        **A.      Block Enterprises, LLC and Russell Spencer**

AO 72A
(Rev.8/82)

### 1.    Copyright Infringement (Block)[3]

Plaintiff alleges that Block and Bad Boy/Atlantic infringed Plaintiff's copyright "to [Robinson's master recordings] through its unauthorized misappropriation and continued misappropriation thereof." (Complaint, Dkt. [1] ¶ 52.) Block and Spencer argue that Plaintiff's copyright infringement claim is time-barred under 17 U.S.C. § 507(b)'s three-year limitation period.[4] (Brief in Support of Defendants Block Enterprises, LLC's and Russell Spencer's Rule 12(b)(6) Motion to Dismiss ("Block-Spencer MTD Br."), Dkt. [11-1] at 12-13.) Whether Plaintiff's claim is time-barred depends on when the infringement claim accrued, an issue that has not been squarely addressed by the Eleventh Circuit.[5]

---

[3] Although the Complaint says "all Defendants" under the heading for the copyright infringement claim (Count I), no allegations against Defendant Spencer are raised with regard to this claim. Therefore, the Court will address this claim for Block only.

[4] 17 U.S.C. § 507(b) reads: "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."

[5] Compare Calhoun v. Lillenas Publ'g, 298 F.3d 1228, 1236 (11th Cir. 2002) ("The statute of limitations for copyright infringement claims is triggered by violations, that is actual infringements. The limitations period may be triggered when a plaintiff knows or, in the exercise of reasonable diligence, should have known about an infringement.") with United States v. Shabazz, 724 F.2d 1536, 1540 (11th Cir. 1984) ("In copyright infringement actions, the period of limitations begins on the date of the last infringing act.").

AO 72A
(Rev.8/82)

Other courts have drawn a distinction between accrual of copyright *infringement* claims and copyright *ownership* claims. See, e.g., Kwan v. Schlein, 634 F.3d 224, 228 (2d Cir. 2011) ("An ownership claim accrues only once, when 'a reasonably diligent plaintiff' would have been put on inquiry as to the existence of a right.' . . . By contrast, an infringement action may be commenced within three years of *any* infringing act, regardless of any prior acts of infringement; we have applied the three-year limitations period to bar only recovery for infringing acts occurring outside the three-year period."); Ediciones Musicalles Y Representaciones Internacionales, S.A. v. San Martin, 582 F. Supp. 2d 1359, 1360-61 (S.D. Fla. 2008) ("Any copyright ownership claim would have begun to accrue when the Plaintiff had reason to know of the alleged injury. . . . [However, a copyright infringement] action can be maintained for all infringing acts which occurred within the last three years prior to this suit.").

However, in some cases, the ownership accrual rule works to bar an infringement claim. To succeed on his infringement claim, Plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). When the first element is in dispute (in other words, when

AO 72A
(Rev.8/82)

resolution of the ownership claim is fundamental to the infringement claim), a time-barred ownership claim bars the infringement claim.  See, e.g., Kwan, 634 F.3d at 230 (Where "the ownership claim is time-barred, and ownership is the dispositive issue, any attendant infringement claims must fail."); Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC, 477 F.3d 383, 389-90 (6th Cir. 2007) ("When claims for both infringement and ownership are alleged, the infringement claim is timely only if the corresponding ownership claim is also timely."); Zuill v. Shanahan, 80 F.3d 1366, 1371 (9th Cir. 1996) (where "creation, rather than infringement, was the gravamen" of plaintiff's claim, accrual of co-ownership claim was determinative); Ortiz v. Guitian Bros. Music, Inc., 2008 WL 4449314, at *3 (S.D.N.Y. Sept. 29, 2008) ("Where, as here, a plaintiff's copyright ownership is not conceded (and, in fact, the defendant holds a prior copyright registration certificate for the disputed work), copyright ownership, and not infringement, is the gravamen of the plaintiff's claim to which the statute of limitations is applied.").

Therefore, the Court must determine whether an ownership claim is the gravamen of Plaintiff's infringement claim.  In Count II of its Complaint, Plaintiff seeks "a declaration that it is the sole owner of the copyrighted works." (Complaint, Dkt. [1] ¶ 64.)  Plaintiff also states, "An actual and justiciable

controversy has arisen and now exists between Plaintiff and Defendant Bad Boy concerning which party is the sole owner of the copyrighted works." (Id. ¶ 63.) The record also reflects that Bad Boy registered Robinson's "New Joc City" album with the Copyright Office on September 15, 2006 [11-5] and registered the "Hustlenomics" album on June 4, 2008 [11-5]. Plaintiff then registered the two albums on January 5, 2012 [11-4]. Thus, Plaintiff's claim to ownership of the copyrights is disputed and is fundamental to its infringement claim, which alleges that Block and Bad Boy/Atlantic had no right to commercially exploit Robinson's albums.

Therefore, because the Court finds that Plaintiff's ownership claim is time-barred, see infra Part II.B.1,, his copyright infringement claim is also barred and Defendants' motion to dismiss is **GRANTED** with respect to this count.

2.      Tortious Interference with Contractual Relations[6]

Plaintiff alleges that Block and Spencer "were fully knowledgeable of the business and contractual relationship existing between [Plaintiff] and [Robinson]" and "Block encouraged, facilitated, assisted, and caused Robinson

---

[6] The Court notes that Defendant Block has not moved to dismiss the breach of contract claim against it (Count III). (See Complaint, Dkt. [1] ¶¶ 65-71.) Therefore, the Court will not address that claim.

AO 72A
(Rev.8/82)

to breach [the Plaintiff-Robinson Artist Development Agreement]."

(Complaint, Dkt. [1] ¶¶ 74.) Defendants argue that Plaintiff's claim is time-barred under O.C.G.A. § 9-3-26's four-year statute of limitations.[7] (Block-Spencer MTD Br., Dkt. [11-1] at 14.) Plaintiff responds that its action is not barred under Georgia's "continuing tort doctrine." (Plaintiff's Brief in Opposition to Block Enterprises, LLC and Spencer's Motion to Dismiss ("Pl.'s Block-Spencer Resp. Br."), Dkt. [14] at 6-8.) The Court agrees with Defendants.

The theory of continuing tort "applies 'where any negligent or tortious act is of a continuing nature and produces injury in varying degrees over a period of time.'" Mears v. Gulfstream Aerospace Corp., 484 S.E.2d 659, 664 (Ga. Ct. App. 1997) (quoting Everhart v. Rich's, Inc., 194 S.E.2d 425 (Ga. 1972)). The "discovery rule" applies to continuing torts – the cause of action "accrues when a plaintiff discovers, or with reasonable diligence should have discovered, both the injury and the cause thereof." Waters v. Rosenbloom, 490

---

[7] Georgia courts do apply a four-year statute of limitations to claims for tortious interference with contractual relations. However, in doing so, they cite O.C.G.A. § 9-3-31, not § 9-3-26. See, e.g, Brantley v. Muscogee Cnty Sch. Dist., 2011 WL 3706567 (M.D. Ga. 2001) (citing Long v. A.L. Williams & Assoc.s, Inc., 323 S.E.2d 868 (Ga. Ct. App. 1984)). The discrepancy is immaterial, however, because it is undisputed that a four-year statute of limitations applies.

S.E.2d 73, 75 (Ga. 1997). However, the Georgia Supreme Court, in <u>Corp. of</u> <u>Mercer Univ. v. Nat. Gypsum Co.</u>, 368 S.E.2d 732, 733 (Ga. 1988), expressly limited the theory of continuing torts and the "discovery rule" to personal injury cases. Because tortious interference with contractual relations is not a personal injury claim, the "discovery rule" does not apply here.

Generally, where the alleged act that caused the damage is not itself unlawful, the statute of limitations begins to run against an action sounding in tort when the damage is sustained. <u>Mears</u>, 484 S.E.2d at 663. But when "the act causing such subsequent damage is of itself unlawful in the sense that it constitutes a legal injury to the plaintiff, and is thus a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, however slight the actual damage then may be." <u>Id.</u> Here, it is immaterial whether the clock started at the time of the alleged wrongful act or when damage was sustained. By both measures, the statute of limitations had run before Plaintiff filed this suit. By the time Robinson's first and second albums were released in June 2006 and August 2007, respectively – without crediting Plaintiff as co-producer or copyright owner, and without Plaintiff receiving any payments from Block or Bad Boy – the alleged wrong had been committed and Plaintiff had suffered damages.

14

Therefore, this claim is not timely under the four-year statute of limitations and Defendants' motion to dismiss is **GRANTED**.

3.    Conversion

Plaintiff alleges that Defendants Block and Spencer "have possession of funds of an unknown amount from advances, royalties, revenue or profits derived from the [Block-Bad Boy Distribution Agreement]" and "their continued exercise of dominion and control over such funds constitutes a conversion of all of such funds rightfully belonging to [Plaintiff]." (Complaint, Dkt. [1] ¶¶ 78, 80.)  Block and Spencer argue that Plaintiff cannot maintain a conversion claim for general monetary damages.  (Block-Spencer MTD Br., Dkt. [11-1] at 15.)  The Court agrees with Defendants.

In Georgia, "generally, money is not subject to a civil action for conversion" because it is not tangible personalty or specific intangible property. Taylor v. Powertel, Inc., 551 S.E.2d 765, 769 (Ga. Ct. App. 2001) (citing Branch v. Alliance Syndicate, 469 S.E.2d 807 (Ga. Ct. App. 1996)).  However, there is an exception when a "specific, separate, identifiable fund" has been set aside or can be distinguished from other money.  Id.  Examples of specific funds or money that may be the subject of a conversion claim include: insurance premiums earmarked for remittance to the insured, certain bills or

AO 72A
(Rev.8/82)

coins to which plaintiff had title, a particular class of bills (where the

denominations of each class are given and the number of bills in each

denomination), or a specific check or negotiable instrument.  See Taylor, 551

S.E.2d 765; Lincoln Nat'l Life Ins. Co. v. Davenport, 410 S.E.2d 370 (Ga. Ct.

App. 1991); Decatur Auto Center v. Wachovia Bank, N.A., 583 S.E.2d 6 (Ga.

2003).

Here, Plaintiff seeks "funds of an unknown amount from advances,

royalties, revenue or profits."[8]  This is a claim for an amount of money

generally, not for a specific, identifiable fund, bill or instrument.  Therefore,

Plaintiff cannot maintain an action for conversion and Defendants' motion to

dismiss with respect to this claim is **GRANTED**.

### 4.    Money Had and Received

Plaintiff alleges, "[u]pon information and belief, [that] Defendants Block

and Bad Boy/Atlantic have possession of funds of an unknown amount that

constitute the unused portion or remainder of [Robinson's first album]

recording budget, as well as other advances, royalties, revenue or profits

derived from [the first album] or related to the production of [the second

---

[8] In its response brief, Plaintiff attempts to include master recordings and
DVDs in its conversion claim.  However, those tangible items are not mentioned in
the complaint.  Therefore, the Court does not consider them in its analysis.

AO 72A
(Rev.8/82)

album]." (Complaint, Dkt. [1] ¶ 82.) Furthermore, Plaintiff alleges, "Block and

Spencer's unilateral depletion of funds in Block's possession or previously in

Block and/or Spencer's possession regarding any aspect of [Robinson's]

services provided to Bad Boy/Atlantic, coupled with Defendant Block's refusal

to provide accounting information" to Plaintiff regarding the second album,

"renders Defendants Block and Spencer liable for Money Had and Received."

(Id. ¶ 84.)  Defendants argue that Plaintiff cannot maintain a claim for money

had and received because "the dispute at issue arises out of an express contract,

the [Plaintiff-Block] Joint Venture Agreement."  (Block-Spencer MTD Br., Dkt.

[11-1] at 18-9.)  The Court agrees with Defendants.

"An action for money had and received , although legal in form, is

founded on the equitable principle that no one ought to unjustly enrich himself

at the expense of another, and is a substitute for a suit in equity.  Such a claim

exists only where there is no actual legal contract governing the issue."

Cappuccitti v. DirecTV, Inc., 623 F.3d 1118, 1126 n. 20 (11th Cir. 2010) (citing

Fernandez v. WebSingularity, Inc., 681 S.E.2d 717, 721 (Ga. Ct. App. 2009));

see also McCaughey v. Bank of Am., N.A., 279 Fed. App'x. 794, 797 (11th Cir.

2008) ("a claim for unjust enrichment is not available where there is an express

contract between the parties" and an "action seeking recovery for money had

17

and received and action for unjust enrichment are not separate causes of action; former is merely one form of action to recover damages based on unjust enrichment").

Here, Plaintiff's claim for money and accounting information is based on the terms of the Plaintiff-Block Joint Venture Agreement. (See Complaint, Dkt. [1] ¶ 83 ("under the terms of the Joint Venture Agreement, [Plaintiff] and Block are to be co-administrators of all recording budgets and financial dealings involving the development of [Robinson], the production of music recordings by [Robinson] and the exploitation and sale of such recordings under the [Block-Bad Boy] Distribution Agreement").)  There is no dispute regarding the legality or validity of the Joint Venture Agreement.

Therefore, the existence of an express contract governing the issue precludes Plaintiff from maintaining an action for money had and received, and Defendants' motion to dismiss with respect to this claim is **GRANTED**.[9]

_____

[9] Plaintiff argues in its response brief that Spencer was not party to the Joint Venture Agreement, and therefore, Plaintiff may maintain an action for money had and received against him.  (Pl.'s Block-Spencer Resp. Br., Dkt. [14] at 12-13.) Defendants counter that Plaintiff is improperly attempting to pierce the corporate veil. (Block-Spencer MTD Reply, Dkt. [19] at 11.)  The Court agrees with Defendants that Plaintiff has not pled sufficient (or indeed, any) facts to pierce the corporate veil here.

AO 72A
(Rev.8/82)

5.    Fraudulent Misrepresentation

Plaintiff alleges that Block and Spencer, in making the Block-Bad Boy

Distribution Agreement, purported "to represent to Bad Boy/Atlantic that Block

was the owner of certain copyrights . . . and entitled to compensation for

transferring its purported interest to Bad Boy/Atlantic." (Complaint, Dkt. [1] ¶

86.) And, "[a]cting upon Block and Robinson's representations, Bad

Boy/Atlantic compensated Block and Robinson for the rights purportedly

transferred to Bad Boy/Atlantic." (Id. ¶ 88.) Defendants argue that this claim is

time-barred under a four-year statute of limitations. (Block-Spencer MTD Br.,

Dkt. [11-1] at 20.) The Court agrees with Defendants.

In Georgia, the statute of limitation for fraud claims is four years.

O.C.G.A. § 9-3-31; Hamburger v. PFM Capital Mgmt., Inc., 649 S.E.2d 779,

784 (Ga. Ct. App. 2007). The claim accrues when the alleged loss occurs,

unless the defendant is "guilty of a fraud by which the plaintiff has been

debarred or deterred from bringing an action." O.C.G.A. § 9-3-96; Hamburger,

649 S.E.2d at 784-5. In the latter instance, where actual fraud is the gravamen

of the underlying claim, the period of limitation runs from the time plaintiff

discovers the fraud or by reasonable diligence should have discovered the fraud.

Hamburger, 649 S.E.2d at 784.

19

Here, according to the complaint, the alleged fraudulent misrepresentation and loss to Plaintiff occurred when the Block-Bad Boy Distribution Agreement was executed.  That occurred in December 2005, more than six years before Plaintiff filed this suit.  Even if the limitations period were tolled here because Defendants' fraud somehow barred or deterred Plaintiff from bringing suit (which Plaintiff does not allege in its complaint), Plaintiff discovered (or should have discovered) the alleged fraud and harm when it brought its first state-court action against Block in February 2007.  In that suit, Plaintiff admitted that it knew immediately when the "New Joc City" album was released (June 2006) that it had not received co-executive producer or copyright credit on the album, which it was entitled to receive under the Plaintiff-Block Joint Venture Agreement.  (Reply Brief of Defendants Bad Boy Records, LLC and Atlantic Recording Corporation in Support of their Rule 12(b)(6) Motion to Dismiss ("Bad Boy-ARC MTD Reply"), Dkt. [20] at 7.)

Therefore, at the latest, Plaintiff's fraudulent misrepresentation claim accrued in 2007, more than four years before this suit was filed, and Defendants' motion to dismiss with respect to this claim is **GRANTED.**

AO 72A
(Rev.8/82)

6. <u>Fraud</u>

Plaintiff alleges that "at the time Defendant Block entered into the Joint Venture Agreement with [Plaintiff], Block had no intention to perform each of the material obligations assumed under the Joint Venture Agreement, and deliberately misrepresented facts to Chauncey Stevens (Master Mind's CEO) and [Robinson] about his [*sic*] intentions and conduct once the Joint Venture Agreement was executed." (Complaint, Dkt. [1] ¶ 92.) Specifically, Plaintiff alleges that Spencer, as the agent of Block, misrepresented that he would defend Plaintiff's interests in negotiations with Bad Boy, that he would co-administer recording budgets for each of Robinson's albums with Plaintiff, that he would coordinate with Plaintiff on the artistic direction for the albums, and that he would provide financial and accounting information to Plaintiff. (<u>Id.</u> ¶ 93.) Defendants argue that Plaintiff's fraud claim is barred by the four-year statute of limitations. The Court agrees with Defendants.

The agreement at issue under this claim is the Plaintiff-Block Joint Venture Agreement, which was executed in October 2005. Again, Plaintiff has not alleged that Defendants' fraud barred or deterred it from bringing suit before 2012. In fact, according to Plaintiff's complaint, Plaintiff was aware for years after the execution of the Joint Venture Agreement that Block and

21

Spencer were not adhering to the agreement and that Plaintiff was not receiving what it was entitled to receive under the agreement. (Id. ¶¶ 30-50.) For instance, Plaintiff admits it was aware that it did not receive co-executive producer credit when "New Joc City" was released in mid-2006. (Id.) Plaintiff also states that it was not allowed to participate in negotiations between Block and Bad Boy regarding the terms of the Distribution Agreement, which was executed in 2005, and that its participation in the production of "Hustlenomics" and attempts to get paid its fair share after the release of "New Joc City" (2006) and "Hustlenomics" (2007) were "intentionally and systematically stonewalled" in contravention of the terms of the Joint Venture Agreement. (Id.) Then, in February 2007, Plaintiff filed suit against Block based on these facts.

At the latest, Plaintiff's claim accrued in 2007. Therefore, Defendants' motion to dismiss with regard to this claim is **GRANTED.**[10]

### B. Bad Boy Records, LLC and Atlantic Recording Corp.

#### 1. Declaratory Relief (Bad Boy) & Copyright Infringement

As discussed above, supra Part II.A.1., Plaintiff seeks a declaration

---

[10] Defendants Block and Spencer do not address Plaintiff's claims for an equitable accounting, punitive damages or attorney's fees (Counts IX-XI). Therefore, the Court will not address those claims.

AO 72A
(Rev.8/82)

against Bad Boy that it is the sole owner of the copyrighted albums.

(Complaint, Dkt. [1] ¶ 64.) Bad Boy argues that the claim for declaratory relief

regarding copyright ownership is time-barred under 17 U.S.C. § 507(b). The

Court agrees with Bad Boy.

A copyright ownership claim accrues when a reasonably diligent Plaintiff

would have reason to know of an injury. See supra Part II.A.I. Determining

"reasonable diligence" is a fact-intensive inquiry. See, e.g., Calhoun, 298 F.3d

at 1237 (court finding no reasonable diligence by plaintiff based on length of

time that passed between alleged injury and suit, wide dissemination of the

allegedly infringing material, and plaintiff's continued experience and

involvement with the type of music at issue); Kwan, 634 F.3d at 228 ("any

number of events can trigger the accrual of an ownership claim"). Here, Bad

Boy contends that several events should have put Plaintiff on notice of a

potential claim, including express assertions of ownership of the copyrighted

materials by Bad Boy that excluded Plaintiff (Plaintiff received no credit on the

albums when they were released), publicly available copyright registrations by

Bad Boy in September 2006 and November 2007, and wide commercial release

of Robinson's albums (Plaintiff itself asserts the albums have sold well over a

million copies). (Brief of Defendants Bad Boy Records, LLC and Atlantic

Recording Corporation in Support of Their Rule 12(b)(6) Motion to Dismiss ("Bad Boy-ARC MTD Br."), Dkt. [12-1] at 14.)

Also, in February 2007, Plaintiff filed suit against Block in state court alleging that Block was not adhering to the terms of their agreement. (Reply Brief of Defendants Bad Boy Records, LLC and Atlantic Recording Corporation in Support of their Rule 12(b)(6) Motion to Dismiss ("Bad Boy-ARC MTD Reply"), Dkt. [20] at 7.) In a brief filed in that case, Plaintiff admitted, "[i]t was immediately apparent to ... Master Mind, when the [New Joc City] album was released that Master Mind did not receive the Co-executive Producer credit that it was contractually entitled to receive under the Joint Venture Agreement." (Id.) Plaintiff, however, contends that the claim did not accrue until it registered its copyrights of the albums in January 2012 and discovered the prior copyrights registered by Bad Boy. (Plaintiff's Brief in Opposition to [Bad Boy's and ARC's][11] Motion to Dismiss ("Pl.'s Bad Boy-ARC Resp. Br."), Dkt. [15] at 7-8.)

The Court finds that Plaintiff, with reasonable diligence, had reason to know of an injury by 2007, at the latest. See Ediciones Musicales, 582 F. Supp.

---

[11] The Court notes that Plaintiff's response brief is mislabeled as "Plaintiff's Brief in Response to Block and Spencer's Motion to Dismiss" [15].

AO 72A
(Rev.8/82)

2d at 1360 (finding copyright ownership claim accrued when defendant registered a United States copyright in the work in question); <u>Margo v. Weiss</u>, 1998 WL 2558, at *5 (S.D.N.Y. 1998) ("Any injury plaintiffs suffered by virtue of not receiving credit as co-authors . . . first occurred [when] the song was written and the copyright certificate listing the lyricists as authors was filed."); <u>Netzer v. Continuity Graphic Assoc.s Inc,</u>, 963 F. Supp. 1308, 1315 (S.D.N.Y. 1997) ("An express assertion of sole authorship or ownership will start the copyright statute of limitations running.").  Notably, in its first state-court suit against Block, Plaintiff contended that it was not receiving what it was entitled to receive under the Plaintiff-Block Joint Venture Agreement.  Plaintiff stated that it was aware of problems as soon as "New Jock City" was released in June 2006.  Plaintiff's concerns about not receiving its fair share of money and recognition were serious enough to take Block to court in early 2007.  Plaintiff should have known about the alleged injury in 2006, or at the very latest, in 2007, when its lawsuit was filed and Robinson's second album was released without crediting Plaintiff.

Therefore, Plaintiff's ownership claim (Count II) is time-barred by 17 U.S.C. § 507(b)'s three-year limitations period and Bad Boy's motion to dismiss this claim is **GRANTED**.  And for the reasons stated in Part II.A.1,

supra, Plaintiff's copyright infringement claim against Bad Boy and ARC is also barred. Therefore, Defendants' motion to dismiss that claim is also **GRANTED.**

### 2. Conversion

Plaintiff's claim for conversion against Bad Boy and ARC mirrors the one against Block and Spencer. (Complaint, Dkt. [1] ¶¶ 79-80.) Bad Boy and Atlantic raise the same arguments for dismissal as those raised by the other Defendants; namely, that Plaintiff cannot bring a conversion claim for a general amount of money. (Bad Boy-ARC MTD Br., Dkt. [12-1] at 8-9.) Therefore, for the reasons stated in Part II.A.3., supra, Bad Boy's and ARC's motion to dismiss with respect to this claim is **GRANTED.**

### 3. Accounting

Plaintiff seeks an accounting of "pertinent financial information regarding the sales, licenses, publishing agreements, transactions, or other commercial exploitation of Plaintiff's property." (Complaint, Dkt. [1] ¶ 101.) However, because Plaintiff has failed to adduce evidence that an accounting would likely result in the discovery of an amount of money to which it is entitled, the claim for an accounting must fail. See St. James Entm't v. Crofts, 837 F. Supp. 2d 1283, 1293 (N.D. Ga. 2011); see also Sampson v. Haywire

<u>Ventures, Inc.</u>, 668 S.E.2d 286, 289 (Ga. Ct. App. 2008) ("The sufficiency of a petition to set forth a party's right to an accounting depends upon whether the facts alleged showed that on an accounting the petitioner will likely be entitled to recover judgment for some amount.") (quoting <u>Charles S. Martin. Distrib. Co. v. Roberts</u>, 134 S.E.2d 587 (Ga. 1964)). Therefore, Defendants' motion to dismiss with regard to this claim is **GRANTED.**

## Conclusion

In accordance with the foregoing, Bad Boy's and ARC's motion to dismiss [12] is **GRANTED** with respect to all claims against them. Spencer's motion to dismiss [11] is **GRANTED** with respect to all claims against him. Block's motion to dismiss [11] is **GRANTED** with respect to all claims against it, except breach of contract (Count III), accounting (Count IX), punitive damages (Count X), and attorneys' fees and expenses of litigation (Count XI).

**SO ORDERED**, this __18th__ day of December, 2012.


_____
**RICHARD W. STORY**
United States District Judge

27